Vanessa R. Waldref
United States Attorney
Eastern District of Washington
Earl A. Hicks
Michael J. Ellis
Assistant United States Attorneys
Post Office Box 1494
Spokane, WA 99210-1494
Telephone: (509) 353-2767

FILED IN THE U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

MAR 2 6 2024

SEAN F. MCAVOY, CLERK
_____, DEPUTY
YAKIMA, WASHINGTON

## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No.: 1:22-CR-02037-MKD |
| Plaintiff, | Plea Agreement |
| v. | Fed. R. Crim. P. 11(c)(1)(C) |
| JAIME HERRERA, | |
| Defendant. | |

Plaintiff United States of America, by and through Vanessa R. Waldref, United States Attorney the Eastern District of Washington, and Earl A. Hicks and Michael J. Ellis, Assistant United States Attorneys for the Eastern District of Washington, and Defendant Jaime Herrera ("Defendant"), both individually and by and through Defendant's counsel, Lorinda Youngcourt and Paul E. Shelton, agree to the following Plea Agreement.

1. <u>Waiver of Indictment</u>

Defendant, having been advised of the right to be charged by Indictment, agrees to waive that right and enter a plea of guilty to the charges brought by the United States in an Information.

//
//

PLEA AGREEMENT - 1

2.    <u>Guilty Plea and Maximum Statutory Penalties</u>

Defendant agrees to enter a plea of guilty to the Information filed on March 26, 2024, which charges Defendant with Second Degree Murder in Indian Country, in violation of 18 U.S.C. §§ 1111, 1152, a Class A felony, and Assault with a Dangerous Weapon in Indian Country, in violation of 18 U.S.C. §§ 113(a)(3), 1152, a Class C felony.

Defendant understands that the following potential penalties apply to Second Degree Murder in Indian Country, in violation of 18 U.S.C. §§ 1111, 1152:

a.    a term of imprisonment of any term of years or life;

b.    a term of supervised release of not more than five years;

c.    a fine of up to $250,000; and

d.    a $100 special penalty assessment.

Defendant understands that the following potential penalties apply to Assault with a Dangerous Weapon in Indian Country, in violation of 18 U.S.C. §§ 113(a)(3), 1152:

a.    a term of imprisonment of not more than ten years;

b.    a term of supervised release of not more than three years;

c.    a fine of up to $250,000; and

d.    a $100 special penalty assessment.

3.    <u>Waiver of Statute of Limitations</u>

Defendant understands that the charges brought by the United States in an Information – Second Degree Murder in Indian Country, in violation of 18 U.S.C. §§ 1111, 1152, and Assault with a Dangerous Weapon in Indian Country, in violation of 18 U.S.C. §§ 113(a)(3), 1152 – are subject to a five-year statute of limitations. *See* 18 U.S.C. § 3282(a). Defendant, having been advised of the statute of limitations, agrees to waive the statute of limitations, and any associated statutory bar to the charges in the Information, and enter a plea of guilty to the charges brought by the United States in an Information.

PLEA AGREEMENT - 2

4.    <u>Supervised Release</u>

Defendant understands that if Defendant violates any condition of Defendant's supervised release, the Court may revoke Defendant's term of supervised release, and require Defendant to serve in prison all or part of the term of supervised release authorized by statute for the offense that resulted in such term of supervised release without credit for time previously served on post release supervision, up to the following terms:

        a.    5 years in prison if the offense that resulted in the term of Supervised Release is a class A felony,

        b.    3 years in prison if the offense that resulted in the term of Supervised Release is a class B felony, and/or

        c.    2 years in prison if the offense that resulted in the term of Supervised Release is a class C felony.

Accordingly, Defendant understands that if Defendant commits one or more violations of supervised release, Defendant could serve a total term of incarceration greater than the maximum sentence authorized by statute for Defendant's offense or offenses of conviction.

5.    <u>The Court is Not a Party to this Plea Agreement</u>

The Court is not a party to this Plea Agreement and may accept or reject it. Defendant acknowledges that no promises of any type have been made to Defendant with respect to the sentence the Court will impose in this matter.

Defendant understands the following:

        a.    sentencing is a matter solely within the discretion of the Court;

        b.    the Court is under no obligation to accept any recommendations made by the United States or Defendant;

        c.    the Court will obtain an independent report and sentencing recommendation from the United States Probation Office;

1          d.    the Court may exercise its discretion to impose any sentence it

2                deems appropriate, up to the statutory maximum penalties; and

3          e.    the Court is required to consider the applicable range set forth

4                in the United States Sentencing Guidelines, but may depart or

5                vary upward or downward under certain circumstances.

6     6.    <u>Potential Immigration Consequences of Guilty Plea</u>

7        If Defendant is not a citizen of the United States, Defendant understands the

8 following:

9          a.    pleading guilty in this case may have immigration

10               consequences;

11         b.    a broad range of federal crimes may result in Defendant's

12               removal from the United States, including the offense to which

13               Defendant is pleading guilty;

14         c.    removal from the United States and other immigration

15               consequences are the subject of separate proceedings; and

16         d.    no one, including Defendant's attorney or the Court, can predict

17               with absolute certainty the effect of a federal conviction on

18               Defendant's immigration status.

19        Defendant affirms that Defendant is knowingly, intelligently, and voluntarily

20 pleading guilty as set forth in this Plea Agreement, regardless of any immigration

21 consequences that Defendant's guilty plea may entail.

22     7.    <u>Waiver of Constitutional Rights</u>

23        Defendant understands that by entering this guilty plea, Defendant is

24 knowingly and voluntarily waiving certain constitutional rights, including the

25 following:

26          a.    the right to a jury trial;

27          b.    the right to see, hear and question the witnesses;

28          c.    the right to remain silent at trial;

PLEA AGREEMENT - 4

d.     the right to testify at trial; and

e.     the right to compel witnesses to testify.

While Defendant is waiving certain constitutional rights, Defendant understands that Defendant retains the right to be assisted by an attorney through the sentencing proceedings in this case and any direct appeal of Defendant's conviction and sentence, and that an attorney will be appointed at no cost if Defendant cannot afford to hire an attorney.

Defendant understands and agrees that any defense motions currently pending before the Court are mooted by this Plea Agreement, and Defendant expressly waives Defendant's right to bring any additional pretrial motions.

8.     <u>Elements of the Offense</u>

The United States and Defendant agree that, in order to convict Defendant of Second Degree Murder in Indian Country, in violation of 18 U.S.C. §§ 1111, 1152, the United States would have to prove the following beyond a reasonable doubt.

a.     *First*, on or about July 19, 2017, within the Eastern District of Washington, Defendant unlawfully killed W.G.O.;

b.     *Second*, Defendant killed W.G.O. with malice aforethought;

c.     *Third*, the killing occurred within the external boundaries of the Yakama Nation Indian Reservation, in Indian Country; and

d.     *Fourth*, W.G.O. was an Indian.

The United States and Defendant agree that, in order to convict Defendant of Assault with a Dangerous Weapon in Indian Country, in violation of 18 U.S.C. §§ 113(a)(3), 1152, the United States would have to prove the following beyond a reasonable doubt.

a.     *First*, on or about July 19, 2017, within the Eastern District of Washington, Defendant assaulted C.E. using a display of force that reasonably caused C.E. to fear immediate bodily harm;

b.     *Second*, Defendant acted with the intent to do bodily harm;

PLEA AGREEMENT - 5

1    c.    *Third*, Defendant used a dangerous weapon;

2    d.    *Fourth*, the assault occurred within the external boundaries of

3    the Yakama Nation Indian Reservation, in Indian Country; and

4    e.    *Fifth*, C.E. was an Indian.

5    9.    Factual Basis and Statement of Facts

6    The parties agree to the following: the facts set forth below are accurate; the

7    United States could prove these facts beyond a reasonable doubt at trial; and these

8    facts constitute an adequate factual basis for Defendant's guilty plea.

9    The parties agree that this statement of facts does not preclude either party

10   from presenting and arguing, for sentencing purposes, additional facts that are

11   relevant to the Sentencing Guidelines computation or sentencing, unless otherwise

12   prohibited in this Plea Agreement.

13   On July 19, 2017, at approximately 3:15 a.m., W.G.O., an enrolled member

14   of the Confederated Tribes and Bands of the Yakama Nation, and C.E., an enrolled

15   member of the Nez Perce Tribe, were walking down a road between Garfield

16   Elementary School and Garfield Park in Toppenish, Washington. The location is

17   within the external boundaries of the Yakama Nation Indian Reservation and in

18   Indian Country. The location is also within the Eastern District of Washington.

19   A light-colored SUV pulled up alongside W.G.O. and C.E.; the vehicle was

20   later identified as a 2007-2015 Ford Edge with an SEL trim package. The driver of

21   the Ford Edge asked W.G.O. and C.E. "what do you claim?" "What do you

22   claim?" is a question commonly asked by gang members when inquiring into

23   another individual's gang status. W.G.O. and C.E. responded that they didn't claim

24   anything. The driver then left, made a U-turn, and drove back to W.G.O. and C.E.

25   The driver again asked "what do you claim?" The driver then pulled out a rifle,

26   stated "you fuckin leva," and shot W.G.O. "Leva" is a term used by gang members

27   to identify an individual believed or perceived to be a traitor or turncoat to the

28

PLEA AGREEMENT - 6

gang. C.E. was standing right next to W.G.O. when W.G.O. was shot. A .223 caliber casing was recovered near W.G.O.'s body.

Defendant was later identified as the driver of the Ford Edge and individual who shot W.G.O. by two persons: one who was present in the Ford Edge with Defendant at the time of the shooting and another who the Defendant told about the shooting on multiple occasions after the shooting. Defendant was also identified as:

1. A Sureno gang member.

2. The registered owner of a 2007-2015 Ford Edge with an SEL trim package.

3. The individual associated with a cellular device that was located around Garfield Elementary School between 3:17 a.m. and 3:26 a.m. on July 19, 2017.

4. Posting on Facebook – on July 12, 2017 – that "They know wassup when i pull out my baby" followed by a photograph of a rifle, identified by Defendant as an AR-15, located on the front passenger seat of Defendant's Ford Edge. An AR-15 firearm can be configured to fire .223 caliber ammunition, the same caliber as the shell casing recovered near W.G.O.'s body.

Defendant admits that he shot and killed W.G.O. with malice aforethought within the external boundaries of the Yakama Nation Indian Reservation, in Indian Country, on July 19, 2017. Defendant further admits that he shot and killed W.G.O. due to Defendant's beliefs regarding W.G.O.'s gang affiliation. Defendant further admits that he pointed the firearm in C.E.'s direction when shooting W.G.O., thereby causing C.E. to reasonably fear bodily injury from the dangerous weapon. Defendant further admits that he – in addition to intending to kill W.G.O. – acted with intent to cause harm.

//

PLEA AGREEMENT - 7

10.   The United States' Agreements

The United States Attorney's Office for the Eastern District of Washington agrees that at the time of sentencing, the United States will move to dismiss the Indictment filed on April 5, 2022, which charges Defendant with, in Count 1, First Degree Murder in Indian Country, in violation of 18 U.S.C. §§ 1111, 1152, in Count 2, Assault with a Dangerous Weapon in Indian Country, in violation of 18 U.S.C. §§ 113(a)(3), 1152, and, in Count 3, Discharging and Using a Firearm During and in Relation to a Crime of Violence, in violation of 18 U.S.C. § 924(c).

The United States Attorney's Office for the Eastern District of Washington agrees not to bring additional charges against Defendant based on information in its possession at the time of this Plea Agreement that arise from conduct that is either charged in the Indictment or identified in discovery produced in this case, unless Defendant breaches this Plea Agreement before sentencing.

11.   United States Sentencing Guidelines Calculations

Defendant understands and acknowledges that the United States Sentencing Guidelines ("U.S.S.G." or "Guidelines") apply and that the Court will determine Defendant's advisory range at the time of sentencing.

a.   Base Offense Level

The United States and Defendant stipulate and agree that the base offense level for Second Degree Murder is thirty-eight (38). *See* U.S.S.G. § 2A1.2(a).[1]

b.   Acceptance of Responsibility

The United States will recommend that Defendant receive a three-level downward adjustment for acceptance of responsibility, pursuant to U.S.S.G. § 3E1.1(a), (b) if Defendant does the following:

      i.   accepts this Plea Agreement;

---

[1] The United States and Defendant acknowledge that further Guidelines calculations pursuant to U.S.S.G. § 3D1.1 will be conducted to determined Defendant's total adjusted offense level.

PLEA AGREEMENT - 8

ii.       enters a guilty plea at the first Court hearing that takes place after the United States offers this Plea Agreement;

iii.     demonstrates recognition and affirmative acceptance of Defendant's personal responsibility for Defendant's criminal conduct;

iv.     provides complete and accurate information during the sentencing process; and

v.      does not commit any obstructive conduct.

The parties agree that, at its option and on written notice to Defendant, the United States may elect not to recommend a reduction for acceptance of responsibility if, before sentencing, Defendant is convicted of any criminal offense or, if Defendant tests positive for any controlled substance.

c.    <u>No Other Agreements</u>

The parties have no other agreements regarding the Guidelines or the application of any Guidelines enhancements, departures, or variances. Defendant understands and acknowledges that the United States is free to make any sentencing arguments it sees fit, including arguments arising from Defendant's uncharged conduct, conduct set forth in charges that will be dismissed pursuant to this Agreement, and Defendant's relevant conduct.

d.    <u>Criminal History</u>

The parties have no agreement and make no representations about Defendant's criminal history category, which will be determined by the Court after the United States Probation Office prepares and discloses a Presentence Investigation Report.

12.   <u>Incarceration</u>

Defendant acknowledges that this Plea Agreement is entered pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C) ("Rule 11(c)(1)(C)"). Pursuant to Rule 11(c)(1)(C), the United States and Defendant agree that the appropriate

PLEA AGREEMENT - 9

disposition of the case is a sentence of 360 months imprisonment. Further,

pursuant to Rule (c)(1)(C), the United States and Defendant agree that the 360-

month sentence should be run consecutively to Defendant's 240-month sentence in

Yakima County Superior Court Case No. 19-1-00669-39. The United States and

Defendant agree to make the above sentencing recommendation to the Court.

Although the United States and Defendant agree to make the above

recommendation to the Court pursuant to Rule 11(c)(1)(C), Defendant

acknowledges that no promises of any type have been made to Defendant with

respect to the sentence the Court will ultimately impose.

Defendant understands that Defendant may withdraw from this Plea

Agreement if the Court imposes a term of imprisonment of greater than

360 months or indicates its intent to do so. Defendant also understands that the

United States may withdraw from this Plea Agreement if the Court imposes a term

of imprisonment of less than 360 months or indicates its intent to do so. Defendant

also understands that the United States may withdraw from this Plea Agreement if

the Court does not impose the 360-month sentence consecutively to Defendant's

240-month sentence in Yakima County Superior Court Case No. 19-1-00669-39 or

indicates its intent to run the sentences – all or in part – concurrently.

The United States and Defendant acknowledge that the imposition of any

fine, restitution, or conditions of Supervised Release are not part of the

Rule 11(c)(1)(C) nature of this Plea Agreement; that the United States and

Defendant are free to make any recommendations they deem appropriate as to the

imposition of fines, restitution, or conditions of Supervised Release; and that the

Court will exercise its discretion in this regard. The United States and Defendant

acknowledge that the Court's decisions regarding the imposition of fines,

restitution, or conditions of Supervised Release will not provide bases for

Defendant to withdraw Defendant's guilty plea or withdraw from this

Rule 11(c)(1)(C) Plea Agreement.

PLEA AGREEMENT - 10

1   Defendant acknowledges that if either the United States or Defendant
2   successfully withdraws from this Plea Agreement, the Plea Agreement becomes a
3   nullity, and the United States is no longer bound by any representations within it.

4       13.   Supervised Release

5   The United States and Defendant jointly agree to recommend that the Court
6   impose a five (5) year term of supervised release. Defendant agrees that the
7   Court's decision regarding the term and conditions of Supervised Release is final
8   and non-appealable; that is, even if Defendant is unhappy with the conditions of
9   Supervised Release ordered by the Court, that will not be a basis for Defendant to
10  withdraw Defendant's guilty plea, withdraw from this Plea Agreement, or appeal
11  any condition of the Supervise Release.

12  The United States and Defendant agree to recommend that in addition to the
13  standard conditions of supervised release imposed in all cases in this District, the
14  Court should also impose the following conditions:

15          (a)  that Defendant participate and complete such drug testing and
16               drug treatment programs as the Probation Officer directs, but not to
17               exceed six non-treatment drug tests per month during the imposed
18               term of supervised release;
19          (b)  that Defendant's person, residence, office, vehicle, and
20               belongings are subject to search, at a sensible time and manner, at the
21               direction of the Probation Officer, based upon reasonable suspicion of
22               contraband or evidence of a violation of a condition of supervision;
23               and
24          (c)  that Defendant have no contact with any identified witness,
25               victim, or family member of a victim identified in this case.

26      14.   Criminal Fine

27  The United States and Defendant agree to recommend that no fine be
28  imposed. Defendant agrees that the Court's decision regarding a fine is final and

PLEA AGREEMENT - 11

1  non-appealable; that is, even if Defendant is unhappy with any fine ordered by the

2  Court, that will not be a basis for Defendant to withdraw Defendant's guilty plea,

3  withdraw from this Plea Agreement, or appeal any fine imposed.

4      15.    Mandatory Special Penalty Assessment

5      Defendant agrees to pay the $200 mandatory special penalty assessment to

6  the Clerk of Court for the Eastern District of Washington. *See* 18 U.S.C. § 3013.

7      16.    Restitution

8      The United States and Defendant agree that restitution is appropriate and

9  mandatory, without regard to Defendant's economic situation, pursuant to

10  18 U.S.C. §§ 3663A, 3664, for the offense conduct to which Defendant has pled

11  guilty for all victims, as defined by 18 U.S.C. § 3663A(a)(2), who were directly

12  and proximately harmed by the offense conduct, including any representatives of

13  any victim's estate. Furthermore, pursuant to 18 U.S.C. § 3663A(a)(3), Defendant

14  voluntarily agrees to pay restitution for all losses, as defined by 18 U.S.C.

15  § 3663A(b)(2)-(4), caused by Defendant's individual conduct, in exchange for the

16  United States not bringing additional potential charges, regardless of whether

17  counts associated with such losses will be dismissed as part of this Plea

18  Agreement.

19      With respect to restitution, the United States and Defendant agree to the

20  following:

21          a.    Restitution Amount and Interest

22      The United States and Defendant stipulate and agree that, pursuant to

23  18 U.S.C. §§ 3663, 3663A and 3664, the Court should order restitution in an

24  amount to be determined at sentencing, and that any interest on this restitution

25  amount, if any, should be waived.

26      The United States and Defendant stipulate and agree that restitution shall be

27  ordered to W.G.O., any representative of W.G.O.'s estate, C.E., and/or any third-

28

PLEA AGREEMENT - 12

1  party compensating the victims or their estates, including Crime Victim's

2  Compensation. 18 U.S.C. § 3664(j)(1).

3          **b.**    <u>Payments</u>

4        To the extent restitution is ordered, the United States and Defendant agree

5  that the Court will set a restitution payment schedule based on Defendant's

6  financial circumstances. 18 U.S.C. § 3664(f)(2), (3)(A). Regardless, Defendant

7  agrees to pay not less than 10% of Defendant's net monthly income towards

8  restitution.

9          **c.**    <u>Treasury Offset Program and Collection</u>

10        Defendant understands the Treasury Offset Program ("TOP") collects

11  delinquent debts owed to federal agencies. If applicable, the TOP may take part or

12  all of Defendant's federal tax refund, federal retirement benefits, or other federal

13  benefits and apply these monies to Defendant's restitution obligations. 26 U.S.C.

14  § 6402(d); 31 U.S.C. § 3720A; 31 U.S.C. § 3716.

15        Defendant understands that the United States may, notwithstanding the

16  Court-imposed payment schedule, pursue other avenues to ensure the restitution

17  obligation is satisfied, including, but not limited to, garnishment of available funds,

18  wages, or assets. 18 U.S.C. §§ 3572, 3613, and 3664(m).

19        Nothing in this acknowledgment shall be construed to limit Defendant's

20  ability to assert any specifically identified exemptions as provided by law, except

21  as set forth in this Plea Agreement.

22        Until Defendant's fine and restitution obligations are paid in full, Defendant

23  agrees fully to disclose all assets in which Defendant has any interest or over

24  which Defendant exercises control, directly or indirectly, including those held by a

25  spouse, nominee or third party.

26        Until Defendant's fine and restitution obligations are paid in full, Defendant

27  agrees to provide waivers, consents, or releases requested by the U.S. Attorney's

28  Office to access records to verify the financial information.

PLEA AGREEMENT - 13

d.    <u>Notifications and Waivers</u>

Defendant agrees to notify the Court and the United States of any material change in Defendant's economic circumstances (e.g., inheritances, monetary gifts, changed employment, or income increases) that might affect Defendant's ability to pay restitution. 18 U.S.C. § 3664(k). Defendant also agrees to notify the United States of any address change within 30 days of that change. 18 U.S.C. § 3612(b)(1)(F). These obligations cease when Defendant's fine and restitution obligations are paid in full.

Defendant acknowledges that the Court's decision regarding restitution is final and non-appealable; that is, even if Defendant is unhappy with the amount of restitution ordered by the Court, that will not be a basis for Defendant to withdraw Defendant's guilty plea, withdraw from this Plea Agreement, or appeal Defendant's conviction, sentence, or restitution order.

17.    <u>Payments While Incarcerated</u>

If Defendant lacks the financial resources to pay the monetary obligations imposed by the Court, Defendant agrees to earn money toward these obligations by participating in the Bureau of Prisons' Inmate Financial Responsibility Program.

18.    <u>Additional Violations of Law Can Void Plea Agreement</u>

The United States and Defendant agree the United States may, at its option and upon written notice to Defendant, withdraw from this Plea Agreement or modify its sentencing recommendation if, before sentencing, Defendant is convicted of any criminal offense or tests positive for any unlawful controlled substance.

19.    <u>Waiver of Appeal Rights</u>

Defendant understands that Defendant has a limited right to appeal or challenge Defendant's conviction and the sentence imposed by the Court.

In return for the concessions that the United States has made in this Plea Agreement, Defendant agrees to waive Defendant's right to appeal Defendant's

PLEA AGREEMENT - 14

1  conviction and sentence if the Court imposes a term of imprisonment consistent
2  with the terms of this Rule 11(c)(1)(C) Plea Agreement.

3       If the Court indicates its intent to impose a sentence above the
4  Rule 11(c)(1)(C) terms of this Plea Agreement and Defendant chooses *not* to
5  withdraw, then Defendant: (a) may appeal only Defendant's sentence, but not
6  Defendant's conviction and (b) may appeal only the substantive reasonableness of
7  Defendant's sentence.

8       Defendant further expressly agrees that, should the Court indicate its intent
9  to impose a sentence above the Rule 11(c)(1)(C) terms of this Plea Agreement,
10  Defendant agrees that Defendant has fourteen (14) days from the sentencing
11  hearing to file with the Court a notice of withdrawal from the Rule 11(c)(1)(C)
12  Plea Agreement. Defendant expressly waives Defendant's right to withdraw from
13  the Rule 11(c)(1)(C) Plea Agreement more than fourteen (14) days after the Court
14  either imposes a sentence above the Rule 11(c)(1)(C) terms of this Plea Agreement
15  or indicates its intent to do so.

16      Defendant expressly waives Defendant's right to appeal any fine, term or
17  conditions of supervised release, or restitution order imposed by the Court.

18      Defendant expressly waives the right to file any post-conviction motion
19  attacking Defendant's conviction and sentence, including a motion pursuant to
20  28 U.S.C. § 2255, except one based on ineffective assistance of counsel arising
21  from information not now known by Defendant and which, in the exercise of due
22  diligence, Defendant could not know by the time the Court imposes sentence.

23      Nothing in this Plea Agreement shall preclude the United States from
24  opposing any post-conviction motion for a reduction of sentence or other attack
25  upon the conviction or sentence, including, but not limited to, writ of habeas
26  corpus proceedings brought pursuant to 28 U.S.C. § 2255.

27  //
28  //

PLEA AGREEMENT - 15

20.    <u>Withdrawal or Vacatur of Defendant's Plea</u>

Should Defendant successfully move to withdraw from this Plea Agreement or should Defendant's conviction be set aside, vacated, reversed, or dismissed under any circumstance, then:

      a.    The United States' obligations in this Plea Agreement shall be null and void;

      b.    the United States may prosecute Defendant on all available charges;

      c.    The United States may reinstate any counts that have been dismissed, have been superseded by the filing of another charging instrument, or were not charged because of this Plea Agreement; and

      d.    the United States may file any new charges that would otherwise be barred by this Plea Agreement.

The decision to pursue any or all of these options is solely in the discretion of the United States Attorney's Office.

Defendant agrees to waive any objections, motions, and/or defenses Defendant might have to the United States' decisions to seek, reinstate, or reinitiate charges if a count of conviction is withdrawn, set aside, vacated, reversed, or dismissed, including any claim that the United States has violated Double Jeopardy.

Defendant agrees not to raise any objections based on the passage of time, including but not limited to, alleged violations of any statutes of limitation or any objections based on the Speedy Trial Act or the Speedy Trial Clause of the Sixth Amendment.

//

//

//

PLEA AGREEMENT - 16

21.  Integration Clause

The parties acknowledge that this document constitutes the entire Plea Agreement between the parties, and no other promises, agreements, or conditions exist between the parties concerning the resolution of the case.

This Plea Agreement is binding only on the United States Attorney's Office for the Eastern District of Washington, and cannot bind other federal, state, or local authorities.

The parties agree this Agreement cannot be modified except in a writing that is signed by both parties.

Approvals and Signatures

Agreed and submitted on behalf of the United States Attorney's Office for the Eastern District of Washington.

Vanessa R. Waldref
United States Attorney

_Earl A. Hicks_                               3/26/2024
Earl A. Hicks                                 Date
Assistant United States Attorney

_Michael J. Ellis_                            3-26-2024
Michael J. Ellis                              Date
Assistant United States Attorney

I have read this Plea Agreement and I have carefully reviewed and discussed every part of this Plea Agreement with my attorney. I understand the terms of this Plea Agreement. I enter into this Plea Agreement knowingly, intelligently, and voluntarily. I have consulted with my attorney about my rights, I understand those rights, and I am satisfied with the representation of my attorney in this case. No other promises or inducements have been made to me, other than those contained

//

PLEA AGREEMENT - 17

in this Plea Agreement. No one has threatened or forced me in any way to enter
into this Plea Agreement. I agree to plead guilty because I am guilty.


_____          3-26-24
Jaime Herrera                             Date
Defendant

     I have read the Plea Agreement and have discussed the contents of the
agreement with my client. The Plea Agreement accurately and completely sets
forth the entirety of the agreement between the parties. I concur in my client's
decision to plead guilty as set forth in the Plea Agreement. There is no legal reason
why the Court should not accept Defendant's guilty plea.


_____          3/26/2024
Lorinda Youngcourt                        Date
Attorney for Defendant

_____          3/26/2024
Paul E. Shelton                           Date
Attorney for Defendant

PLEA AGREEMENT - 18